**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR. NO. 22-cr-116 (CJN)** |
| | : | |
| **DAVID JOSEPH GIETZEN,** | : | |
| | : | |
| **Defendant.** | : | |

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE, FIVE, SIX, AND SEVEN OF THE INDICTMENT**

---

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits that this Court should deny Gietzen's motion, ECF No. 41, seeking dismissal of Count One, Five, Six and Seven of the Indictment. Count One charges Defendant with civil disorder, in violation of 18 U.S.C. § 231(a)(3) and 2. Count Five charges Defendant with entering and remaining in a restricted building and grounds with a dangerous or deadly weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A). Count Five charges Defendant with disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A). Count Seven charges Defendant with engaging in physical violence within the United State Capitol Building or grounds in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A).

In his motion, Gietzen asserts that Counts One, Five, Six and Seven fail to state an offense, fail to give proper notice, and are unconstitutionally vague. Gietzen's contentions lack merit. These

1

motions rest on arguments that courts in this district[1] have routinely rejected and should likewise be denied for the reasons explained herein.

## LEGAL STANDARD

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition

---

[1] This Court rejected arguments of failure to state an offense and vagueness in *United States v. Fisher*, No. 21-CR-234 (CJN), 2022 WL 782413, at *2-3 (D.D.C. Mar. 15, 2022).

before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal

cases have no mechanism equivalent to the civil rule for summary judgment. *United States v.*

*Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not

criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism

that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera*

*Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases

explaining that there is no summary judgment procedure in criminal cases or one that permits

pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does

not depend on forecasts of what the government can prove. Instead, a criminal defendant may

move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United*

*States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state

an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is

limited to reviewing the face of the indictment and more specifically, the language used to charge

the crimes. *Bingert*, 2022 WL 1659163 at *3 (a motion to dismiss challenges the adequacy of an

indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that

the crimes charged were committed); *McHugh*, 2022 WL 1302880 at *2 (a motion to dismiss

involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency

of the evidence); *United States v. Puma*, 2020 WL 823079 at *4 (D.D.C. Mar. 19, 2022) (quoting

*United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

# ARGUMENT

## I.     Count One (18 U.S.C. § 231)

Gietzen's motion to dismiss Count One, charging Defendant with 18 U.S.C. § 231(a)(3), on the basis that the indictment does not contain facts essential to the offense charged, and that Section 231 is unconstitutionally vague, should be denied. The indictment sufficiently puts Defendant on notice of the date, place, and general conduct of the crimes alleged and, therefore, does not require allegations beyond the elements of the offenses. Section 231 is not unconstitutionally vague because it plainly criminalizes conduct that intentionally interferes with named personnel performing their duties and does not criminalize any protected activity.

### A.  The Superseding Indictment provides sufficient notice

Gietzen contends that Count One in the Superseding Indictment should be dismissed because it does not provide adequate specificity and information as to the charge against him. Gietzen premises this challenge on Federal Rule of Criminal Procedure 7(c)'s requirement that an indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."

Gietzen misunderstands the purpose of an indictment and the low bar it must clear to satisfy the Federal Rules of Criminal Procedure and the Constitution. As the D.C. Circuit explained in *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), "[a]lthough an indictment must in order to fulfill constitutional requirements apprise the defendants of the essential elements of the offense with which they are charged, neither the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed." *Id.* at 124. Indeed,

"the validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). "While detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 110. As a mere notice pleading, an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Haldeman*, 559 F.2d at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)).

Applying these principles, judges in this District have upheld the sufficiency of indictments far less specific than Gietzen's. For example, in *United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017), the defendants were charged with offenses under 18 U.S.C. § 924(c). The indictments provided only "general detail as to the places where the offenses were committed: namely, Mexico and the United States." *Id.* at 154. As to the "when" of the offenses, the indictments alleged that the offenses had occurred over a two- and nine-year period. *Id.* Finally, the indictments "d[id] not specify a particular weapon that was possessed," or "specify whether the firearms were 'used, carried or brandished'" under the statute. *Id.* Nonetheless, the indictments were sufficient.

Judges in this District have also upheld against specificity challenges to indictments that

5

arose out of the January 6, 2021, riot at the U.S. Capitol and are identical to the operative indictment in this case. For example, in *United States v. Sargent*, Judge Hogan rejected a similar specificity challenge to an indictment charging Section 231 and other charges also faced by Defendants in this case. No. 21-CR-258, 2022 WL 1124817, at *3 (D.D.C. Apr. 14, 2022). In a careful and deliberate opinion, Judge Hogan concluded that every one of the charged counts was properly alleged because each stated the elements of the offense and, though the charging language closely mirrored the statute, no further factual allegations were required to provide notice or protect against double jeopardy concerns. *Id.* at *2–*10.

In *United States v. Williams*, Judge Berman Jackson similarly found that the language of an indictment charging a violation of 18 U.S.C. § 231(a)(3) that largely tracked the statute was sufficiently specific. No. 21-CR-618, 2022 WL 2237301, at *8 (D.D.C. June 22, 2022). She observed: "the first paragraph of the indictment comprising Count I sets forth all of the elements of section 231(a)(3) . . . It thereby enables Williams to prepare a defense and plead that an acquittal or conviction is a bar to future prosecutions." *Id.*

The Section 231(a)(3) charging language that passed muster in *Williams*, *see* No. 21-CR-618, ECF 27 at 1-2 (Count One), is identical to Count One of the indictment here, *see* ECF 35 at 1-2 (Count One). As in *Sargent* and *Williams*, the indictment provides sufficient information to fairly inform Defendant of those offenses. Defendant knows the day on which the alleged crimes occurred: January 6, 2021, which is alleged in all counts. *See* ECF 35. He knows that all charged conduct occurred in this District, from the indictment's allegation. *Id.* Multiple counts specifically refer to conduct on U.S. Capitol grounds, further narrowing the "where" of the charged crimes, and at a time when the Vice President was and would be temporarily visiting. Count One relates specifically to an existing civil disorder and to a law enforcement officer. The statutes charged are

not so unusually vague that they require allegations beyond the elements of the offenses.

**B. 18 U.S.C. § 231 is not Unconstitutionally Vague**

Gietzen also brings a facial challenge to Section 231, arguing that it is unconstitutional on its face for several reasons: (1) Section 231 criminalizes "any act to obstruct, impede, or interfere" which is expressive conduct. ECF 41 at 6, (2) Section 231 lacks predictability and precision, *Id.* at 6-7; (3) Section 231 is subject to challenge because it lacks a scienter requirement, *Id.* at 7; (4) Section 231 criminalizes free speech, *id.* at 9; and (5) Section 231 violates the separation of powers, *id.* at 11. None of these arguments has merit, and similar arguments were appropriately rejected by other judges in this District. *See e.g., United States v. Mostofsky*, 579 F. Supp. 3d 9, 14 (D.D.C. 2021), *United States v. Sara Carpenter*, 21-cr-305 (JEB), *United States v. Williams*, No. 21-CR-618 (ABJ), 2022 WL 2237301, at *4-5 (D.D.C. June 22, 2022).

**i.    Section 231's Language Is Clear**

Constitutional statutory analysis begins with the statute's plain language. *United States v. Shill*, 740 F.3d 1347, 1351 (9th Cir. 2014). Federal legislation enjoys a presumption of constitutionality that may only be overturned "upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000). Section 231(a)(3) criminalizes any act or attempted act to "obstruct, impede, or interfere" with a law enforcement officer "lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." The statute defines civil disorder as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other

7

individual." 18 U.S.C. § 232(1).

Gietzen next claims that Section 231 is subject to challenge because, according to Gietzen, he cannot tell whether the statute requires an individual to have participated in the civil disorder or if it is sufficient that he be in the general vicinity of the event. ECF No. 41 at 7. This argument, too, is meritless. "The crime set forth by the statute is not mere presence at a civil disorder . . . but an act committed during the course of such a disorder, so 'civil disorder' simply describes the environment in which the act must be committed in order to be subject to prosecution under § 231(a)(3)." *Mechanic*, 454 F.2d at 852; *see also United States v. Howard*, 2021 WL 3856290, at *14 (E.D. Wis. Aug. 30, 2021) ("[T]he statute does not require the government to prove that the defendant created the civil disorder, or that he was participating in the civil disorder."). Moreover, "it is not just any public disturbance which is the subject of the section, but only public disturbances which (1) involve acts of violence (2) by assemblages of three or more persons, and which (3) cause immediate danger of or result in injury to (4) the property or person of any other individual." *Mechanic*, 454 F.2d at 853; *see* 18 U.S.C. § 232(1).

### ii.    Section 231 Does Not Criminalize Activity Protected by The First Amendment

Gietzen's motion is most appropriately cast as an overbreadth argument—that is, he contends that Section 231 criminalizes too wide an array of activity including protected speech. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008), quoting *New York v. Ferber*, 458 U.S. 747, 769-771 (1982); *see also City of Houston v. Hill*, 482 U.S. 451, 458 (1987). "A statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 293; *see also Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972). An

overbreadth challenge faces a steep climb when the statute focuses mainly on conduct, as Section 231(a)(3) assuredly does. *See Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (noting the "substantial social costs created by the overbreadth doctrine when it blocks application of a law to . . . constitutionally unprotected conduct").

In *United States v. Mechanic*, 454 F.2d 849 (8th Cir. 1971), the Eight Circuit rejected a similar overbreadth challenge to Section 231(a)(3). "The operative words of the statute are 'whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer.'" *Id*. 852. "Thus, the section applies only to a person who acts to impede, obstruct, or interfere with an official described in the statute." *Id*. The Eighth Circuit held that "conduct involved here [the massing of a mob that threw stones at an R.O.T.C. building on a college campus to protest the Viet Nam war, followed by rock and bottle throwing at fireman who arrived to quell the disturbance] is not entitled to constitutional protection," *as* "[t]he First Amendment has not been extended to protect rioting, inciting to riot, or other forms of physical violence." *Id.* (citing *National Mobilization Com. to End War in Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969)). Thus, the Eighth Circuit concluded, Section 231(a)(3) "does not purport to reach speech of any kind. It reaches only acts to impede, obstruct, or interfere with police officers and firemen." *Id.; see also United States v. Wood*, 2021 WL 3048448, at *7 (D. Del. July 20, 2021) ("This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech.").

Because "the statute does not attempt to curtail speech the defendants may not challenge it as vague or overly broad if their own conduct may be constitutionally prohibited, since . . . one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *Mechanic,* 454 F.2d at 853, citing *United States v. Raines*,

362 U.S. 17, 21 (1960). Accordingly, Section 231's "plain text, . . . indicates that it is 'targeted primarily if not exclusively at conduct rather than speech,'" rendering defendant's overbreadth challenge without merit. *Mostofsky*, 2021 WL 6049891 at * 8.

### iii.   Section 231 Does Not Lack a Scienter Element

Third, Gietzen claims that Section 231 lacks a scienter element, which he asserts weighs further in favor of the statute's overbreadth or vagueness. ECF 41 at 7-9. But the scienter requirement clearly implied by the language neutralizes this concern. The statute requires proof that the underlying act was done "to obstruct, impede, or interfere" with a firefighter or law enforcement officer, *i.e.* the defendant's purpose or intent in performing the act must be to obstruct, impede, or interfere. *See Mechanic*, 854 F.2d at 854 ("§ 231(a) (3) must be construed to require intent"); *United States v. Featherston*, 461 F.2d 1119, 1122 (5th Cir. 1972) (§ 231(a)(3) is not unconstitutional on its face because the statute requires intent and "does not cover mere inadvertent conduct"); *Williams*, 553 U.S. at 294 (focusing on scienter requirement in finding that a statute was not overbroad). Even if the statute lacked an express scienter requirement, courts "generally interpret . . . criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Elonis v. United States*, 135 S. Ct. 2001, 2009 (2015) (citation omitted); *see also United States v. Cassel*, 408 F.3d 622, 634 (9th Cir. 2005) ("[E]xcept in unusual circumstances, we construe a criminal statute to include a mens rea element even when none appears on the face of the statute.").

More generally, Gietzen states that the "imprecise language" of Section 231 creates the risk that the statute's scope would create criminal prohibition of "alarming breadth." ECFO No. 41 at 8. This appears to argue that Section 231 is void for vagueness but fails to make the requisite showing for such a claim. A statute is impermissibly vague if it either (1) "fails to provide people

of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. at 732 (*citing City of Chicago v. Morales*, 527 U.S. 41, 56-57 (1999)); *see also United States v. Wunsch,* 84 F.3d 1110, 1119 (9th Cir. 1996)*.* But Section 231 is not vague; it punishes intentional conduct directed against firefighters and law enforcement officers carrying out their official duties during a civil disorder. The statute prohibits only concrete "act[s]" that are performed with the specific purpose to "obstruct, impede, or interfere" with firefighters or law enforcement. And it prohibits not the mere presence at a civil disorder, but rather, "an act committed during the course of such disorder." *Mechanic*, 454 F.2d at 853.

The statute's intent is plain and provides ample notice, as every court that has considered this issue has found. *Mechanic*, at 853–54 ("§ 232, read in conjunction with § 231(a) (3), is sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden under it"); *United States v. Huff*, 630 F. App'x 471, 487-89 (6th Cir. 2015) (unpublished) ("[W]e reject Huff's void-for-vagueness argument [regarding § 231(a)(3)] in all respects"); *United States v. Banks*, 368 F. Supp. 1245, 1247 (D.S.D. 1973) (rejecting vagueness challenge to § 231(a)(3), following *Mechanic*), *abrogated on other grounds by United States v. Auginash*, 266 F.3d 781 (8th Cir. 2001); *see generally Wood*, 2021 WL 3048448, at *9 ("Defendant does not have standing to bring a facial vagueness challenge" to § 231(a)(3) because he failed to "demonstrate that [the statute]is vague as applied to his conduct").

Section 231(a)(3) is "sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden." *Mechanic*, 454 F.2d at 854. Gietzen's facial attack on Section 231 should be rejected.

11

### iv.    Section 231 Does Not Infringe on The Separation of Powers

Last, Gietzen argues this Court and other courts cannot interpret Section 231(a)(3) to be constitutional if it is unconstitutional on its face. ECF No. 41 at 11. For the reasons set forth above, the statute is constitutional on its face. Therefore, defendant's "separation of powers" argument is moot.

### III.    <u>Counts Five, Six, and Seven (18 U.S.C. § 1752)</u>

Gietzen moves to miss Counts Five, Six, and Seven, charging 18 U.S.C. § 1752, on the following grounds: (1) only the Secret Service, not the Capitol Police, can delegate "restrictive areas", (2) the Secret Service did not establish the "restricted area" on January 6, 2021, and (3) one of the Secret Service's protectees that day, former Vice President Mike Pence, was not "temporarily visiting" the Capitol. ECF 57 at 23-28.

These are now well-trodden arguments in this district, having been raised and rejected consistently in similar cases arising from the January 6th Capitol attack. The area was restricted due to a visiting protectee and therefore the Secret Service did not have to expressly establish the restricted area. For the following detailed reasons, the Court should deny Gietzen's motion here as well.

### A. Section 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction.

In two parts, Defendant asserts that Counts Five, Six, and Seven charging 18 U.S.C. §§ 1752(a)(1)–(2) and (b)(1)(A) and §1752(a)(4), should be dismissed for failure to state an offense because the U.S. Capitol Police, and not the Secret Service, designated the "restricted area" around the U.S. Capitol on Jan. 6, 2021. ECF 41 at 11-13. Nothing in the express language of Section 1752 requires this, and Defendant's attempts to read such a requirement as implied in the

statutory language flies against the commonsense reading of the text and its legislative history.

Section 1752 provides in relevant part:

(a) Whoever—

(1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; [or]

(2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

(c) In this section—

(1) [T]he term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—

(B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting;

18 U.S.C. § 1752. Section 1752 also defines "restricted building or grounds" to include any posted, cordoned off, or otherwise restricted area "of the White House or its grounds, or the Vice President's official residence or its grounds" or "of a building or grounds so restricted in conjunction with an event designated as a special event of national significance." 18 U.S.C. §§ 1752(c)(1)(A), (C).

The language of Section 1752 contains no express requirement that the "restricted buildings or grounds" must be restricted by USSS for there to be a violation of Section 1752. Nonetheless, Defendant argues the requirement is the exclusive role of the Secret Service. ECF 41

at 12. However, because the plain language of the statute is clear and unambiguous, reading the implied requirement provided by Defendant is unwarranted. Even if one were to look beyond this plain language, the legislative history of Section 1752 also weighs against Defendant's interpretation.

First, there is no ambiguity in the text of Section 1752 as to the meaning of "restricted building or grounds." Namely, Section 1752 proscribes certain conduct in and around "any restricted building or grounds," *see* 18 U.S.C. § 1752(a), and it provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," § 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and Defendants do not appear to dispute—that "person[s] protected by the Secret Service" include the Vice President. § 1752(c)(2); *see* § 3056(a)(1). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, knowingly and unlawfully entering or remaining, § 1752(a)(1), and knowingly and with intent to impede or disrupt government business, engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" "government business," § 1752(a)(2).

In short, Section 1752 "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020). Where, as here, the words of the statute are unambiguous, "the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). However, under Defendants' interpretation of Section 1752, there is an additional, implied requirement unstated in

14

the statutory language above that any restricted area must be designated by USSS. There is no such requirement, nor is there any credible rationale why one should be inferred.

And while looking beyond the plain language is unwarranted here, *See United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940) (stating that looking beyond clear statutory text is appropriate where the results would be absurd or demonstrably at odds with clearly expressed Congressional intent), the legislative history of Section 1752 in fact affirms the plain reading of the text that Defendants resist. As Defendant acknowledges, when Section 1752 was first enacted in 1970, USSS was part of the Treasury Department, and this original version of the statute explicitly incorporated regulations promulgated by the Treasury Department governing restricted areas. *See United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005) (noting that definition of restricted area required interpreting Treasury regulations). Specifically, subsection (d) of Section 1752 gave authority to Treasury, which oversaw USSS, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." Pub. L. 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971).

However, when Congress revised Section 1752 in 2006, it struck subsection (d) from the statute, eliminating the requirement that "restricted building or grounds" be necessarily defined or designated by USSS or any other particular law enforcement agency. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). In 2012, Congress further reinforced this interpretation by adding the definitional subsection (c) cited above, which provides the current definition of "restricted building or grounds." Pub. L 112-98, Title I, Sec. 2, 126 Stat 263 (March 8, 2012). Contrary to Defendants' reading, the legislative history shows that Congress deliberately excised any requirement that a restricted area depend on any definition or determination by USSS.

15

Both the plain language and legislative history of Section 1752 show that there is no requirement, express or implied, that an area be restricted by a particular law enforcement agency, as courts in this district have unanimously held. *United States v. Grider*, --- F.Supp.3d ---, 2022 WL 3016775, at *7 (D.D.C. July 29, 2022) (collecting cases) (internal quotations omitted) ("[N]othing in the statutory text requires the Secret Service to be the entity to restrict or cordon off a particular area, nor does Grider point to any provision in the statute in support of such a proposition."); *United States v. Bingert*, --- F.Supp.3d ---, 2022 WL 1659163, at *14 (D.D.C. May 25, 2022) ("[D]efendants fashion a bizarre requirement, seemingly out of thin air: that only the Secret Service can designate an area as restricted [for the purposes of 18 U.S.C. § 1752].")." Defendants' contention that Counts Five, Six, and Seven are defective for this reason should be likewise rejected.

### B. Several Secret Service protectees were temporarily visiting the Capitol grounds on Jan. 6, 2021

Section 1752 prohibits the unlawful entry into a restricted or otherwise cordoned off "building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). As the government intends to prove at trial, at the time of Defendants' relevant conduct on Capitol grounds on January 6, 2021, three Secret Service protectees—Vice President Pence and two immediate family members—were present. Defendants' conduct accordingly falls within the Section 1752's plain sweep when they entered the restricted area of the Capitol and assaulted law enforcement officers with a metal barricade while the Vice President and his family were "temporarily visiting."

Defendant contends that the Section 1752 charges against them must be dismissed because the U.S. Capitol grounds on Jan. 6, 2021, were not a building or grounds "where the President or

16

other person protected by the Secret Service is or will be temporarily visiting." ECF 41 at 15. In particular, Defendant argues that because former Vice President Mike Pence lived and worked in the District of Columbia, and because he had an office inside the Capitol building, he could therefore not be "temporarily visiting" the building or grounds for the purposes of Section 1752.

First, Gietzen make no mention of Vice President Pence's two immediate family members—both USSS protectees—who were also with him that day. This makes any argument as to whether Vice President Pence was "temporarily visiting" a moot point. Regardless, the Court should reject Defendants' argument as meritless, as all others have,[2] as it defies Section 1752's plain terms, purpose, and structure.

As noted above, to determine the meaning of a statute, a court "look[s] first to its language, giving the words used their ordinary meaning." *Levin*, 568 U.S. at 513 (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[3] Either definition describes the Secret Service protectees' activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. Similarly, the Vice President's family members came to the U.S.

---

[2] *E.g. United States v. Puma*, 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022) (rejecting same argument as "not supported by the statutory text and … out of step with the statutory context); *United States v. McHugh*, 583 F. Supp. 3d 1, 35 (D.D.C. 2022) ("None of McHugh's arguments about the meaning of 'temporarily visiting' sway the Court from the commonsense conclusion, founded on ordinary usage, dictionary definitions, and judicial interpretations, that Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021."); *United States v. Rodriguez*, No. CR 2 (ABJ), 2022 WL 3910580, at *16 (D.D.C. Aug. 31, 2022) ("This strained interpretation is inconsistent with both the text and the structure of the statute.").

[3] https://www.merriam-webster.com/dictionary/visit.

Capitol for a particular purpose: to observe these proceedings. Finally, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President and his family members, the U.S. Capitol qualified as a building where "[a] person protected by the Secret Service [was] . . . temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

Defendant emphasizes Section 1752's use of the term "temporarily," citing cases where the President or Vice President were "traveling outside of D.C., where they live and work, 'visiting' that area for a 'temporary' purpose." ECF 41 at 17. First, Section 1752 does not impose a requirement that the location being temporarily visited be outside of the District of Columbia. Second, Section 1752 does not require that the purpose of the visit be temporary, but that the nature of the visit itself be temporary. Vice President Pence and his family had traveled to the U.S. Capitol to oversee and attend the Joint Session of Congress—a proceeding of limited duration. At the close of the proceeding, they left—confirming the "temporary" nature of their visit.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:     */s/ Elizabether Eikerson*
Elizabeth N. Eriksen
VA Bar No. 72399
Trial Attorney, Detailee
1301 New York Avenue, N.W., 8th Floor
Washington, DC 20530
(202) 616-4385
Elizabeth.Eriksen@usdoj.gov


*/s/ Rebekah E. Lederer*
REBEKAH E. LEDERER
Assistant United States Attorney
Bar No. PA 320922
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-7012
Rebekah.Lederer@usdoj.gov